IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| FIFTH THIRD BANK, | : |
| | : Case No. 1:09-cv-0619 |
| Plaintiff, | : |
| | : Chief Judge Susan J. Dlott |
| v. | : |
| | : ORDER DENYING |
| RBS CITIZENS, N.A., | : PLAINTIFF'S MOTION FOR |
| | : TEMPORARY RESTRAINING |
| Defendant. | : ORDER AND PRELIMINARY |
| | : INJUNCTION |
| | : |

This matter comes before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 2.) Plaintiff Fifth Third Bank (hereinafter "Fifth Third") filed its Complaint (doc. 1) and the Motion for a Temporary Restraining Order (doc. 2) on August 24, 2009. That same day, the Court held a hearing on Plaintiff's Motion for Temporary Restraining Order at which time the Court ordered the parties to submit further briefing on the matter by 9:00 a.m. the following day. After reviewing those briefs and considering the parties' arguments, the Court denied Fifth Third's motion for a temporary retraining order during a telephonic hearing on August 25, 2009. The reasons for the Court's ruling are set forth below.

I.  BACKGROUND

On March 28, 2008, Fifth Third entered into a Co-Lender Agreement with Defendant RBS Citizens, N.A. (hereinafter "RBS") under which Fifth Third issued a Standby Letter of

1

Credit for approximately $103 million (the "Letter of Credit") of a more than $600 million credit enhancement issued by RBS in connection with a bond issued to fund FC Beekman's acquisition and development of certain real property in New York City for the New York City Department of Housing Preservation and Development. (See Co-Lender Agreement, Doc. 1, Ex. 1.)

The Co-Lender Agreement contains a ratings downgrade provision, pursuant to which RBS is entitled to convert its collateral from the Letter of Credit into cash. That provision, which is central to the parties' dispute, states as follows:

> Each Standby L/C Issuer shall maintain an unsecured long term debt rating of at least A- as published by Standard & Poor's Ratings Services ("S&P") or an equivalent rating by another Rating Agency. If the senior unsecured long term debt rating of a Standby L/C Issuer is downgraded to BBB+ as published by S&P (or an equivalent rating by another Rating Agency), such Standby L/C Issuer will have sixty (60) days to secure an acceptable replacement Standby L/C Issuer pursuant to the terms of this Agreement and the Credit Agreement; provided, however, that if an acceptable replacement is not delivered within said sixty (60) day period, RBS may, at its option, draw the available amount of the applicable Standby Letter of Credit and to hold the proceeds of such drawing as cash collateral as Co-Lenders Cash Collateral (as hereinafter defined). If the senior unsecured long term debt rating of a Standby L/C Issuer is downgraded to BBB or lower as published by S&P (or an equivalent rating by another Rating Agency), RBS at any time thereafter shall have the right to draw the available amount of the applicable Standby Letter(s) of Credit and to hold the proceeds of such drawing in a separate interest-bearing account in such other Co-Lender's name which is under the sole control of RBS as cash collateral for the respective other Co-Lender's obligations under this Agreement (the "Co-Lenders Cash Collateral").

(Co-Lender Agreement ¶ 4A(a)(ii), Doc. 1, Ex. 1 at 7.)

On June 17, 2009, RBS learned that S&P had downgraded the unsecured long term debt rating of Fifth Third to BBB+. Fifth Third admits that it has suffered this downgrade, and alleges that it has a current credit rating of A- by Fitch and A2 by Moody's. Believing the S&P rating downgrade to trigger paragraph 4A(a)(ii) of the Co-Lender Agreement, on July 6, 2009,

RBS notified Fifth Third that it had sixty days from June 17, 2009 to secure a replacement letter of credit issuer acceptable to RBS. Fifth Third failed to provide a replacement, instead contending that it remained in compliance with Co-Lender Agrement. On August 14, 2009, RBS notified Fifth Third that it intended to draw down on the Letter of Credit on Friday August 28, 2009. Fifth Third then filed suit against RBS, seeking an order temporarily restraining RBS from drawing on the Letter of Credit.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes the Court to grant a temporary restraining order. When deciding whether to grant preliminary injunctive relief, the Court considers four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of preliminary injunctive relief would cause substantial harm to others; and (4) whether the public interest would be served by issuance of preliminary injunctive relief. See Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000); see also Mason County Med. Ass'n v. Knebel, 563 F.2d 256, 261 (6th Cir. 1977).

## III. ANALYSIS

### A. Strong Likelihood of Success on the Merits

The central question in this dispute – what triggers RBS's ability to draw on Fifth Third's Standby Letter of Credit – depends upon the interpretation of the following portion of the Co-lender Agreement:

> Each Standby L/C Issuer shall maintain an unsecured long term debt rating of at least A- as published by Standard & Poor's Ratings Services ("S&P") or an equivalent rating by another Rating Agency. If the senior unsecured long term debt rating of a Standby L/C Issuer is downgraded to BBB+ as published by S&P

3

> (or an equivalent rating by another Rating Agency), such Standby L/C Issuer will have sixty (60) days to secure an acceptable replacement Standby L/C Issuer pursuant to the terms of this Agreement and the Credit Agreement; provided, however, that if an acceptable replacement is not delivered within said sixty (60) day period, RBS may, at its option, draw the available amount of the applicable Standby Letter of Credit and to hold the proceeds of such drawing as cash collateral as Co-Lenders Cash Collateral (as hereinafter defined).

(Co-Lender Agreement ¶ 4A(a)(ii), Doc. 1, Ex. 1 at 7.) Fifth Third argues that the plain language of the first sentence indicates that Fifth Third remains in compliance with the Agreement as long as it maintains an S&P debt rating of at least A- "*or* an equivalent rating by another Rating Agency," defined in the Co-Lender Agreement to include Fitch and Moody's. (Id. emphasis added.) Fifth Third argues that the second sentence must be interpreted in conjunction with the first sentence to mean that RBS may not draw on the letter of credit unless *all three* credit reporting agencies – S&P, Fitch, and Moody's – downgrade Fifth Third's debt rating.

RBS responds that Fifth Third's proposed interpretation ignores the plain language of the second sentence, which indicates that all that is required to trigger RBS's ability to request a replacement letter of credit or draw on Fifth Third's letter or credit is that *either* S&P *or* one of the other agencies downgrade Fifth Thirrd's debt rating. RBS maintains that the first and second sentence are reconcilable if the paragraph is interpreted as follows:

> Fifth Third's "first sentence" sets the threshold requirement of an A- rating by S&P or, should S&P no longer rate Fifth Third, an equivalent rating by another agency. If Fifth Third "is downgraded to BBB+ as published by S&P (or an equivalent rating by another Rating Agency)," and there is no dispute that this has happened, then RBS is obliged to provide (and did provide) Fifth Third time to secure an acceptable replacement issuer. If, however, Fifth Third "is downgraded to BBB or lower as published by S&P (or an equivalent rating by another Rating Agency), RBS at any time thereafter shall have the right to draw" the Letter of Credit immediately.

4

(Doc. 3 at 6.) In other words, according to RBS, the first sentence should be read as establishing Fifth Third's S&P rating as the proper measure of its debt rating, but allowing for the substitution of a different rating in the event that S&P ceased to exist or to provide such ratings.

The parties agree that the interpretation of the Co-Lender Agreement is governed by New York law. When interpreting contracts, New York courts have repeatedly applied the proposition that "when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms." Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475, 807 N.E.2d 876, 879 (N.Y. 2004). Where a contract is ambiguous, courts may consider extrinsic or parole evidence. See South Road Assoc., LLC v. Intern. Business Machines Corp., 4 N.Y.3d 272, 278, 826 N.E.2d 806, 809 (N.Y. 2005) ("Whether a contract is ambiguous is a question of law and extrinsic evidence may not be considered unless the document itself is ambiguous."). However, "extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." Id. Rather, in determining whether a contract is in fact ambiguous, courts should look within the four corners of the contract. Kass v. Kass, 91 N.Y.2d 554, 566, 696 N.E.2d 174, 180 (N.Y. 1998).

If there is any apparent inconsistency in the language, courts should first attempt to interpret the contract to harmonize the apparent inconsistency. See Steadfast Inc. Co. v. Sentinel Real estate Corp., 283 A.D.2d 44, 51, 727 N.Y.S.2d 393, 399 (N.Y. App. Div. 2001) (stating that, "where two seemingly conflicting provisions reasonably can be reconciled, a court is required to do so and to give both effect.") Ultimately, a "contract should be construed so as to give full meaning and effect to all of its provisions." Am. Express Bank Ltd. v. Uniroyal, Inc.,

164 A.D.2d 275, 277, 562 N.Y.S.2d 613 (N.Y. App. Div. 1990).

Applying those principles of interpretation, the Court finds that Fifth Third fails to demonstrate a likelihood of success on the merits. Fifth Third maintains that its reading of the contract is the only reading that harmonizes the language of the contract without reliance on extrinsic evidence. To the contrary, Fifth Third failed to suggest a coherent interpretation of the contract that would give effect to the second sentence of the disputed provision without altering the plain meaning of that sentence. On the other hand, RBS has proffered a reasonable reading of the contract that gives effect to both sentences and appears consistent with the overall purpose of the provision. The Court finds RBS's reading of the contract persuasive. However, the Court need not determine as a matter of law at this time that the contract should be interpreted as RBS suggests because, even ignoring RBS's suggested interpretation, Fifth Third has offered no interpretation that would save the contract from a finding of ambiguity. Such a finding would be sufficient to deny the requested injunctive relief. See Blue Planet Software, Inc. v. Games Int., LLC, 334 F. Supp. 2d 425, 434-35 (S.D.N.Y. 2004) (noting that because the contract language at issue was ambiguous, it could not be said at the preliminary injunction phase of the litigation that either side was likely to succeed on the merits); Victory Lane Quick Oil Change, Inc. v. Hoss, Civil No. 07-14463, 2009 WL 2461260, at *6 (E.D. Mich. Aug. 10, 2009).

Finally, even if the Court were to construe the contract as Fifth Third urges, Fifth Third still would not have shown a likelihood of success on the merits because it failed to demonstrate that its current Fitch and Moody's ratings are "equivalent" to an S&P rating of A-, as would be required under the Co-Lender Agreement. Indeed, Fifth Third did not in any manner address the nature of the three ratings scales.

## B. Irreparable Injury

The Court also finds that Plaintiff failed to demonstrate that it will suffer irreparable harm in the absence of a temporary restraining order. The only potential damages identified by Plaintiff are either monetary in nature or highly speculative. Such injury is insufficient to justify the extraordinary relief Plaintiff seeks. See Basicomputer Corp. v. Scott, 973 F.2d 507, 511 (6th Cir. 1992) ("[A] plaintiff's harm is not irreparable if it is fully compensable by money damages."); Langley v. Prudential Mortgage Capital Co., LLC, 554 F.3d 647, 649 (6th Cir. 2009); Abney v. Amgen, Inc., 443 F.3d 540, 552 (6th Cir. 2006) ("To demonstrate irreparable harm, the plaintiffs must show that . . . they will suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated.").

As Plaintiff failed to demonstrate a likelihood of success on the merits or risk of irreparable injury, the Court need not consider the remaining factors.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 2.)

    IT IS SO ORDERED.

    ___s/Susan J. Dlott_____
    Chief Judge Susan J. Dlott
    United States District Court